## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| WHIRLPOOL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  21-cv-00979EJW |
| | ) | |
| v. | ) | |
| | ) | |
| DAVIDE CABRI, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

John Anderson Sensing, Bindu Ann George Palapura, Jesse Leon Noa, POTTER ANDERSON & CORROON, LLP, Wilmington, DE; Joseph W. Hammell, Steven M. Zadravecz, JONES DAY, Minneapolis, MN & Irvine, CA – Attorneys for Plaintiffs

Ethan Haller Townsend, Michael J. Sheehan, Brian Mead, Aaron P. Sayers, MCDERMOTT WILL & EMERY LLP, Wilmington, DE – Attorney for Defendant

May 5, 2022
Wilmington, Delaware

**WALLACH, U.S. CIRCUIT JUDGE:**

Plaintiff Whirlpool Corporation ("Whirlpool") brought this action against Defendant Davide Cabri ("Mr. Cabri"), asserting breach of contract and trade secret violations under federal and state law.  Complaint (D.I. 1).

There are three motions now pending before the court: (1) Whirlpool's Emergency Motion for Preliminary Injunction and Expedited Proceedings (D.I. 7, 8), (2) Mr. Cabri's Motion to Dismiss (D.I. 27), and (3) Mr. Cabri's Motion to Stay Discovery Pending Resolution of His Motion to Dismiss (D.I. 39).  This case was previously referred to U.S. Magistrate Judge Jennifer Hall, who issued a Report and Recommendation (D.I. 26) recommending dismissal of Whirlpool's Emergency Motion for Preliminary Injunction and Expedited Proceedings, which sought to enjoin Mr. Cabri from beginning work in the employ of one of Whirlpool's chief competitors, Haier Group's ("Haier") subsidiaries, Candy Hoover Group S.r.l.  Whirlpool timely filed Objections to the Report and Recommendation (D.I. 29), which requires the court to review de novo the magistrate's recommendation.[1]

For the reasons that follow, Magistrate Judge Hall's Report and Recommendation (D.I. 26) is ADOPTED as modified, Plaintiff's Emergency Motion for Preliminary Injunction and Expedited Proceedings (D.I. 7) is DENIED as moot, Defendant's Motion to Dismiss (D.I. 27) is DENIED as to Count One and GRANTED as to Counts Two, Three, and Four without prejudice, and Defendant's

---

[1]        Under 28 U.S.C. § 636, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id.* § 636(b)(1).

Motion to Stay Discovery Pending Resolution of His Motion to Dismiss (D.I. 39) is DENIED as moot.

## **BACKGROUND**

### I.   UNDERLYING FACTS

Plaintiff Whirlpool is a Delaware corporation with its principal place of business in Michigan.  Complaint ¶ 6.  Mr. Cabri is an Italian citizen, residing in Italy, who was hired by Whirlpool's Italian subsidiary Whirlpool EMEA S.p.A. ("Whirlpool EMEA") in April 1989.[2]  *Id.* ¶¶ 2, 7.  Whirlpool alleges that Mr. Cabri built his long-term career at the company and "consistently was promoted to more and more senior positions within the company" until he held positions at "one of the highest levels of Whirlpool's global product organization," including as the Global Platform Leader for Laundry and for Built-In Cooking.  *Id.* ¶ 2.  Further, Whirlpool alleges that Mr. Cabri has "reported to superiors in the United States, managed multiple U.S. employees, and visited corporate and manufacturing facilities in the United States."[3]  *Id.* ¶¶ 2, 7, 31–33.  In his position as a global executive in these divisions, Mr. Cabri developed and implemented "Five Year Plans"[4] for various technologies, oversaw product development, and cultivated intellectual property.  *Id.* ¶ 2.

---

[2]      The court has diversity jurisdiction under 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000 and the dispute is between a citizen of a State and a citizen of a foreign state.  The court does not reach the issue of federal question jurisdiction under 28 U.S.C. § 1331 as to the federal trade secret claim (Count Three of Whirlpool's Complaint) because it dismisses Count Three for lack of personal jurisdiction.

[3]      Whirlpool does not allege that any of the contacts that Mr. Cabri has had within the United States are in the forum state of Delaware.  Instead, it alleges that he "reports to a supervisor in Michigan" and has a "Human Resources contact . . . based in Michigan."  Complaint ¶ 7.  The Complaint further describes Mr. Cabri's visits to various Whirlpool facilities in Michigan, Ohio, and Tennessee, but not in Delaware.  *Id.* ¶¶ 31–33.

[4]      The exact content and structure of the "Five Year Plans" are not in the record, but Whirlpool's Complaint states that its Five Year Plans include:

## A.    Award Plans

As a Whirlpool executive, Mr. Cabri received conditional equity and cash awards in excess of $1 million.  *Id.* ¶ 4.  The rewards Mr. Cabri received can be divided into two categories: "Conditional Equity and Cash Incentive Awards," granted pursuant to Whirlpool's 2018 Omnibus Stock and Incentive Plan (the "2018 Omnibus Plan") and previous Omnibus Plans, and "Conditional PEP [Performance Excellence Plan] Bonus Awards," granted pursuant to Whirlpool's 2014 Performance Excellence Plan (the "2014 PEP") and previous Performance Excellence Plans.[5]  *Id.* ¶¶ 51–52.  The nature of the awards granted under the 2018 Omnibus Plan and the 2014 PEP is distinct.  The 2018 Omnibus Plan covers grants of stock, options, and cash awards as long-term performance-based incentives.  Complaint ¶ 51 n.3; Declaration of Brooke Yost in Support of Emergency Motion for Preliminary Injunction and Expedited Proceedings, Ex. A ("Yost Declaration") (D.I. 10-1).  The 2014 PEP provides cash bonuses based on an employee's achieving target goals for a single fiscal year.  *Id.* ¶ 52 n.4.  Whirlpool underscores the distinction between the

---

which . . . products Whirlpool will release . . . , when Whirlpool plans to release those products, the new features those products will have, how those new features will differentiate the product from competing products, the design challenges implicated by those new products and the associated features, how those challenges were overcome, and the ways in which Whirlpool plans to address similar challenges in future products.

Complaint ¶ 40.

[5]    Unsigned copies of these plans on file with the Securities and Exchanges Commission were provided via weblinks in Whirlpool's Complaint, and the 2018 Omnibus Plan as well as two previous Omnibus Plans (2010 and 2013) were submitted as exhibits in support of Whirlpool's Emergency Motion for Preliminary Injunction and Expedited Proceedings ("Motion for Preliminary Injunction").  Complaint ¶¶ 51–52 nn.3–4; Declaration of Brooke Yost in Support of Motion for Preliminary Injunction, Exs. A–B ("Yost Declaration") (D.I. 10-1).  Where necessary, the court references the exhibits and appended plans, because "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks omitted) (citation omitted).

awards made under the individual plans by consistently referring to the awards separately throughout the Complaint and raising separate claims based on each plan.  *See generally* Complaint.

### 1.      2018 Omnibus Plan

Whirlpool alleges that Mr. Cabri received "equity and cash incentive awards" pursuant to the 2018 Omnibus Plan "totaling €473,891.39."  Complaint ¶ 85.  Whirlpool further alleges that Mr. Cabri's receipt of these awards was governed by a repayment provision, which provided that an employee "Participant" who received an award pursuant to it is required to repay it "if the Participant becomes employed with a competitor within the two year period following termination" or "for any other reason considered . . . to be detrimental to the Company or its interests."  *Id.* ¶ 51; *see* Yost Declaration Ex. A ¶ 12.5.

The 2018 Omnibus Plan also contains a Delaware choice of law clause ("2018 Choice of Law Clause") and a forum selection clause ("2018 Forum Selection Clause") (as did Whirlpool's previous Omnibus Plans).  The 2018 Choice of Law Clause states that: "The [2018 Omnibus] Plan and all determinations made and actions taken thereunder, to the extent not otherwise governed by the Code or the laws of the United States, shall be governed by the laws of the State of Delaware, without reference to principles of conflict of laws, and construed accordingly."  Yost Declaration Ex. A ¶ 12.13; *see* Complaint ¶ 8.  The 2018 Forum Selection Clause provides that

> Any suit, action or proceeding with respect to the Plan or any Award Agreement,[6] or any judgment entered by any court of competent jurisdiction in respect of any thereof, shall be resolved only in the courts of the State of Delaware or the United States District Court for the District of Delaware and the appellate courts having

---

[6]      "Award Agreement" is a defined term in the 2018 Omnibus Plan, as follows: "'*Award Agreement*' shall mean any agreement, contract or other instrument or document evidencing any Award *hereunder*, whether in writing or through an electronic medium."  Yost Declaration Ex. A ¶ 2.2 (emphasis added).  "Award" is defined as "any Option, Stock Appreciation Right, Restricted Stock Award, Restricted Stock Unit Award, Other Share-Based Award, Performance Award or any other right, interest or option relating to Shares or other property (including cash) *granted pursuant to the provisions of the [2018 Omnibus] Plan*."  *Id.* ¶ 2.1 (emphasis added); *see also, e.g., id.* ¶ 2.18 (defining "Performance Award" as "any Award of Performance Cash or Performance Shares *granted pursuant to Article 9 [of the 2018 Omnibus Plan]*").

jurisdiction of appeals in such courts. In that context, and without limiting the generality of the foregoing, the Company and *each Participant shall irrevocably and unconditionally (a) submit in any proceeding relating to the Plan or any Award Agreement, or for the recognition and enforcement of any judgment in respect thereof (a "Proceeding"), to the exclusive jurisdiction of the courts of the State of Delaware, the court of the United States of America for the District of Delaware,* and appellate courts having jurisdiction of appeals from any of the foregoing, and agree that all claims in respect of any such Proceeding shall be heard and determined in such Delaware State court or, to the extent permitted by law, in such federal court, *(b) consent that any such Proceeding may and shall be brought in such courts and waives any objection that the Company and each Participant may now or thereafter have to the venue or jurisdiction of any such Proceeding in any such court or that such Proceeding was brought in an inconvenient court and agree not to plead or claim the same . . . .*

Yost Declaration Ex. A ¶ 12.13 (emphasis added); *see* Complaint ¶ 8.

### 2. 2014 PEP

Whirlpool alleges that the "cash incentive awards" that Mr. Cabri received pursuant to the 2014 PEP and "previous similar PEP Plans" total €573,704.93. Complaint ¶¶ 91, 94. Like the 2018 Omnibus Plan, the 2014 PEP provides for repayment if "the Participant becomes employed with a competitor within the two year period following termination, or for any other reason considered by the [Chief Executive Officer and Senior Vice President, Global Human Resources or such other Committee as Whirlpool establishes] in its sole discretion to be detrimental to the Company or its interests." *Id.* ¶ 52.

The 2014 PEP contains a choice of law clause stating that the plan will be construed in accordance with the laws of the State of Michigan. Complaint ¶ 52 n.4 (attach. ¶ 8.8). The 2014 PEP does not contain a forum selection clause, however, nor does Whirlpool allege that prior PEPs contain language addressing forum selection. *See generally id.*

### B. Mr. Cabri's Departure from Whirlpool EMEA for Haier

In April 2021, Mr. Cabri announced to Whirlpool leadership that he was leaving the company to work for a subsidiary of Haier (a direct competitor of Whirlpool) in Italy. *Id.* ¶ 3. Whirlpool

5

alleges that his new position with Haier would be comparable to the one that he held with Whirlpool, as "he will have profit and loss responsibility over Haier's laundry operations, at least in Europe and potentially on a more global basis." *Id*. Upon receiving this information, Whirlpool notified Mr. Cabri that he owed the company "€1,047,596.32 in previously issued conditional equity and cash incentive awards" and that it had decided to recover the money because of Cabri's employment with a competitor and because his conduct was "determined to be detrimental to the Company and its interests" as it placed "at risk Whirlpool's confidential information and trade secrets." *Id*. ¶ 61 (internal quotation marks omitted). In the notice, Whirlpool demanded that Mr. Cabri acknowledge his repayment obligation and noted "that his failure to do so would be deemed a refusal to make the payment due." *Id*. ¶ 62. Whirlpool further alleges that Mr. Cabri did not provide the necessary acknowledgment and has "effectively refused to pay Whirlpool the amounts he owes . . . for the equity and cash incentive awards he received." *Id*.

## II.   PROCEDURAL HISTORY

In July 2021, Whirlpool filed its Complaint, seeking "Declaratory, Injunctive, and Other Relief" against Mr. Cabri. *See generally* Complaint. The Complaint alleged four causes of action. *Id*. ¶¶ 80–117. Counts One and Two, (the "Contract Counts"), claim breach of contract by Mr. Cabri for his alleged failure to repay the awards he received under the 2018 Omnibus Plan (in Count One) and the 2014 PEP (in Count Two). *Id*. ¶¶ 86–88, 95–97. Counts Three and Four, (the "Trade Secret Counts"), are brought under the federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 (Count Three), and the Delaware Uniform Trade Secrets Act ("DUTSA"), 6 Del. C. § 2001 (Count Four). *Id*. ¶¶ 98–117. In support of the Trade Secret Counts, Whirlpool alleges that Mr. Cabri

6

will disclose confidential information, intentionally or otherwise, in his new role at Haier.[7]  *Id.* ¶¶ 102, 112.

Next, Whirlpool filed its Emergency Motion for Preliminary Injunction and Expedited Proceedings ("Motion for Preliminary Injunction") in July 2021, to prevent Mr. Cabri from working for Haier.  Motion for Preliminary Injunction.  In August 2021, a hearing was held before Magistrate Judge Hall.  In Judge Hall's subsequent Report and Recommendation, she raised the issue of whether the court had personal jurisdiction over Mr. Cabri as to the Trade Secret Counts.  Report and Recommendation at 4–8.  This issue arose because of two concessions Whirlpool made at the oral hearing before Judge Hall: (1) that the preliminary injunction it sought was based on the Trade Secret Counts alone, and (2) that the only theory supporting the court's exercise of personal jurisdiction was based on Mr. Cabri being bound by the Forum Selection Clause in the 2018 Omnibus Plan.  *Id.* at 6.  Judge Hall determined that the Trade Secret Counts were not related to the 2018 Omnibus Plan, because the 2018 Omnibus Plan did not include any language prohibiting the employee from working for a competitor or from disclosing confidential information or trade secrets.  *Id.* at 6–7 ("To be clear, the award plan agreement does not contain any promises regarding confidentiality or trade secrets, nor does it contain any non-compete promises. It says, essentially, that if the employee goes to work for a competitor, it might have to pay back some of the award money, but there is no promise that the employee won't work for a competitor.").  Since the 2018 Omnibus Plan's Forum Selection Clause therefore did not apply to the Trade Secret Counts, Judge Hall recommended that the preliminary injunction be denied as Whirlpool failed to show that it would be reasonably likely to succeed in establishing personal jurisdiction.  *Id.* at 6, 8.  Whirlpool timely objected to the Report and Recommendation, arguing that the court had personal jurisdiction over Mr. Cabri as to the Trade

---

[7]      At the time Whirlpool filed its Complaint, Mr. Cabri was not yet employed by Haier, but was expected to begin his employment there in August 2021.  Complaint ¶ 60.

Secret Counts.  Objections to the Report and Recommendation.  After Judge Hall issued her Report and Recommendation, Mr. Cabri filed his Motion to Dismiss, in which he asserts four bases for dismissal under Federal Rule of Civil Procedure ("Rule") 12(b) and the doctrine of forum non conveniens.  *See generally* Motion to Dismiss.

In his Motion to Dismiss, Mr. Cabri first argues that the court lacks personal jurisdiction over him to hear the case under Rule 12(b)(2).  *Id*. at 1–4.  Specifically, Mr. Cabri contends that he never consented to the Forum Selection Clause contained in the 2018 Omnibus Plan, and that neither it nor the Choice of Law Clause contained therein should be enforced, as Delaware courts do not enforce provisions that are "contrary to the fundamental policy of another jurisdiction with a materially greater interest in the dispute," and Italy has a materially greater interest in this case.  *Id.* at 2 (internal quotations and citation omitted); *see also* Mr. Cabri's Opposition to Motion for Preliminary Injunction 6, 9–11 (D.I. 14).  Even if the court should find that the 2018 Forum Selection Clause is enforceable against him, Mr. Cabri argues that it would not operate as a waiver of personal jurisdiction as to the Trade Secret Counts (Counts Three and Four), because the Forum Selection Clause does not cover trade secret claims.  Motion to Dismiss 2–3.

Second, Mr. Cabri argues that the court lacks subject matter jurisdiction under Rule 12(b)(1) as to the Trade Secret Counts, because Whirlpool does not have standing to sue on behalf of Whirlpool EMEA, its Italian subsidiary, as the Italian Code of Civil Procedure prohibits Whirlpool EMEA from transferring "to Whirlpool its right to a judicial claim related to Whirlpool EMEA's employment relationship with Cabri."  *Id.* at 4–5.

Third, Mr. Cabri moves to dismiss under the doctrine of forum non conveniens,[8] asserting that the doctrine should apply because the claims, evidence, and relevant witnesses are all in Italy and not the United States. *Id.* at 6. Mr. Cabri noted in his brief opposing Whirlpool's Motion for Preliminary Injunction, that there is ongoing parallel litigation between Whirlpool EMEA and himself in Italy. Opposition to Motion for Preliminary Injunction 12–13.

Finally, Mr. Cabri argues that that the allegations underlying the Trade Secret Counts fail to state a claim upon which relief can be granted under Rule 12(b)(6). *Id.* at 6–8. Specifically, he argues that it is not clear that the federal and state legislatures intended for either the DTSA or DUTSA to apply to speculative allegations of misappropriation that occur in other countries. *Id.* at 6–7. Moreover, he argues that Whirlpool has not pled sufficient facts to outline "what specific information is entitled to trade secret protection." *Id.* at 7–8. He states that Whirlpool's only theory of trade secret misappropriation is his inevitable disclosure of such secrets, which is insufficient to support such these causes of action. *Id.* at 8.

With discovery pending, Mr. Cabri also filed a Motion to Stay Discovery Pending Resolution of His Motion to Dismiss ("Motion to Stay Discovery"). He requested the stay on the basis that his Motion to Dismiss was then pending before the court, and the possibility that his participation in any discovery would be construed as a waiver of his objection to personal jurisdiction. Motion to Stay Discovery 1–2.

The court heard oral argument on all the parties' motions on April 29, 2022.

---

[8]     Mr. Cabri cites to Rule 12(b)(3) (dismissal for lack of proper venue) in the opening paragraph of his Motion to Dismiss, but it is worth noting that a motion to dismiss under the doctrine of forum non conveniens does not require a finding that venue is improper. Rather, forum non conveniens allows a court to dismiss a case in which jurisdiction and proper venue exist, but where the circumstances are nonetheless such that "trial in the chosen forum would 'establish oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48 (1994) (alterations in original) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)).

## DISCUSSION

## I.    MR. CABRI'S MOTION TO DISMISS IS DENIED AS TO COUNT ONE

As a threshold matter, the court finds that the 2018 Choice of Law Clause and the 2018 Forum

Selection Clause are enforceable as to Whirlpool's Count One breach of contract claim.[9]  The court

further finds that the Forum Selection Clause operates as a consent by Mr. Cabri to personal

jurisdiction as to Count One.  Finally, because the court concludes that the applicable factors weigh

in favor of adjudicating Count One in Delaware, the court declines to dismiss Count One under the

doctrine of forum non conveniens.[10]

---

[9]      In his Opposition to Whirlpool's Motion for Preliminary Injunction, upon which he
relies in his Motion to Dismiss, Mr. Cabri argues that he did not in fact consent to the 2018 Omnibus
Agreement, and thus cannot be bound by its terms.  *See* Opposition to Motion for Preliminary
Injunction 7 ("Whirlpool . . . has failed to provide any documentation establishing that Cabri agreed
to the 2018 Plan (or a prior version of the 2018 Plan).  Instead, Whirlpool only provides a link to the
SEC's archives where the 2018 Plan was attached as an exhibit to an SEC filing. This is telling. Cabri
is not aware of ever receiving the 2018 Plan.  Whirlpool is therefore asking this Court to make a
significant evidentiary leap and assume that Cabri consented to the forum selection clause."); *see also*
Motion to Dismiss 1.  Mr. Cabri concedes, however, that he received the equity and incentive awards
at issue.  *See* Opposition to Motion for Preliminary Injunction 4 (emphasis added) ("Whirlpool sued
Cabri, seeking forfeiture of equity and incentive awards that he earned . . . .").

         At the motion to dismiss stage, the court "accept[s] all of the plaintiff's allegations as true and
construe[s] disputed facts in favor of the plaintiff."  *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361,
368 (3d Cir. 2002) (citation omitted).  Accordingly, solely for purposes of deciding Mr. Cabri's
Motion to Dismiss, the court accepts as true Whirlpool's allegation that Mr. Cabri agreed to the 2018
Omnibus Plan.

[10]      Mr. Cabri's Motion to Dismiss also argued, pursuant to Rule 12(b)(1), that the court
lacks subject matter jurisdiction over at least some of the claims in Whirlpool's Complaint because
"Whirlpool does not have standing to pursue any claims on behalf of Whirlpool EMEA."  Motion to
Dismiss 4–5 ("[I]n a throwaway line in Paragraph 6 of the Complaint, Whirlpool claims that Cabri's
actual employer (Whirlpool EMEA) assigned to Whirlpool its rights, interests, and claims related to
this action. . . . But, it is not permissible for Whirlpool to bring claims on behalf of Whirlpool EMEA.
According to Article 81 of the Italian Code of Civil Procedure, Whirlpool EMEA cannot transfer to
Whirlpool its right to a judicial claim connected with Whirlpool EMEA's employment relationship
with Cabri.").  Mr. Cabri conceded at oral argument that he makes this argument solely with respect

A.    **The Choice of Law Clause in the 2018 Omnibus Plan Is Enforceable**

1.    **Legal Standard**

To determine if the choice of law provision will be enforced, "federal courts sitting in diversity apply the choice-of-law rules of the forum state"—here, Delaware. *Homa v. Am. Express Co.*, 558 F.3d 225, 227 (3d Cir. 2009). Delaware uses the test stated in the Restatement (Second) of Conflict of Laws §187, which states that a choice of law clause will be enforced unless "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." *Total Holdings USA, Inc. v. Curran Composites, Inc.*, 999 A.2d 873, 881 (Del. Ch. 2009) (quoting RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 187(2) (1971)).

In sum, "Delaware courts are generally reluctant to subvert parties' agreed-upon choice-of-law provisions." *Change Cap. Partners Fund I, LLC v. Volt Elec. Sys., LLC*, No. N17C–05–290 RRC, 2018 WL 1635006, at *1 (Del. Super. Ct. Apr. 3, 2018); *see also Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 963 (Del. Ch. 2020) (citation omitted) (stating that courts in Delaware will "only disregard a choice-of-law provision 'in rare circumstances'").

---

to the Trade Secret Counts. Minute Entry dated 05/22/2022. Because the court dismisses the Trade Secret Counts for lack of personal jurisdiction, it does not reach the issue of standing. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citation omitted) ("[T]here is no mandatory 'sequencing of jurisdictional issues.'").

## 2.      **Delaware Law Applies to Count One**

Mr. Cabri challenges the applicability of the 2018 Choice of Law Clause[11] on the basis of public policy and Italy's allegedly greater material interest in the dispute.  Motion to Dismiss 2 ("Whirlpool's claims will be governed by Italian law in an Italian court, notwithstanding the 2018 Plan's Delaware choice of law . . .  provision[] because Delaware courts will not enforce such provisions that are 'contrary to [the] fundamental policy' of another jurisdiction with a 'materially greater interest' in the dispute.") (first quoting *Ascension Ins. Holdings, LLC v. Underwood*, No. 9897–VCG, 2015 WL 356002, at \*2–3 & n.8 (Del. Ch. Jan. 28, 2015); then citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187).  Mr. Cabri further argues that "Italy has a materially greater interest than Delaware and would not enforce the choice of law, forum selection, or clawback provisions in the 2018 [Omnibus] Plan."  Motion to Dismiss 2.  In his Opposition to Whirlpool's Motion for Preliminary Injunction, Mr. Cabri argued that Italy had a "fundamental public policy" against non-competes, which the "clawback" repayment provision in the 2018 Omnibus Plan effectively was.  Opposition to Motion for Preliminary Injunction 9 ("Per Article 2125 of the Italian Civil Code, a non-compete must be (i) in writing; (ii) restricted to a specific activity and a specific area; (iii) be limited in time; and (iv) provide financial compensation to the employee for any period of the non-compete covenant. . . . Delaware law does not require any such financial compensation.") (citing Declaration of Francesco Rotondi in Opposition to Motion for Preliminary Injunction (D.I. 16).  Mr. Cabri also argues that Italy has a "fundamental public policy of protecting its citizens," reflected in "Section 413 of the Italian Code of Civil Procedure requir[ing] that jurisdiction must be

---

[11]      Mr. Cabri challenges the 2018 Choice of Law Clause and the 2018 Forum Selection Clause on the same grounds—that enforcement would be contrary to public policy and that Italy has a materially greater interest in the dispute.  *See* Motion to Dismiss 2.  In addition, Mr. Cabri argued in his Opposition to Whirlpool's Motion for Preliminary Injunction that he never consented to the Forum Selection Clause because he never saw the 2018 Omnibus Agreement.  Opposition to Motion for Preliminary Injunction 6–7.  As already addressed, the court does not credit this argument at the motion to dismiss stage.  *See Pinker*, 292 F.3d at 368.

in an Italian court for a dispute between an Italian citizen and an Italian company, irrespective of the law and forum chosen by the parties." Opposition to Motion for Preliminary Injunction 9–10.

For similar reasons, Mr. Cabri argues that Italy has a "materially greater interest in the dispute" because Delaware's interest in freedom of contract is "manifestly outweighed" by Italy's interest in "overseeing conditions of employment relationships," and because this is a "a dispute between an Italian citizen and Italian company." *Id.* at 8, 10–11 (quoting *NuVasive, Inc. v. Miles*, No. 2017-0720-SG, 2019 WL 4010814, at *7 (Del. Ch. Aug. 26, 2019)).

The court finds that neither of the exceptions in Restatement (Second) Conflict of Laws § 187 apply and that the 2018 Choice of Law Clause is enforceable as to Count One.

The first exception—which Mr. Cabri does not address—does not apply because a substantial relationship exists between the parties and the transaction with Delaware on the basis of the 2018 Choice of Law Clause itself. *Change Cap. Partners Fund I*, 2018 WL 1635006, at *5 ("The existence of a choice-of-law clause establishes a material relationship between the chosen state and the transaction.").

Turning to the second exception under § 187(2), the court finds that Mr. Cabri has not made "a strong showing" that refusing to enforce the 2018 Choice of Law Clause "'would vindicate a public policy interest even stronger' than Delaware's touchstone interest in contractual enforcement." *Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.*, No. CV N18C-09-211 AML CCLD, 2021 WL 761639, at *6 (Del. Super. Ct. Feb. 26, 2021) (citation omitted) ("Delaware law controls unless the [party seeking to evade the clause] demonstrate[s] clearly that the . . . provision is unenforceable because of a public policy in a state with an interest materially greater than Delaware's."); *see also, e.g.*, *Kan-Di-Ki, LLC v. Suer*, No. 7937–VCP, 2015 WL 4503210, at *18 (Del. Ch. July 22, 2015) ("To take advantage of this Restatement-based exception [§ 187(2)], Suer would have to demonstrate both: (1) that enforcement of the Non–Competition Provisions would be contrary to California public

13

policy—even assuming that California would be the state whose law would apply if not for the choice-of-law provisions; and (2) that California has a 'materially greater interest' than Delaware in the enforcement or non-enforcement of the Non[-]Competition Provisions."); *cf. Ascension*, 2015 WL 356002, at *5 (emphasis added) ("California's *specific* interest is materially greater than Delaware's *general* interest in the sanctity of a contract that has no relationship to this state.").

Here, Mr. Cabri has failed to make the necessary showing under § 187(2). He has identified no fundamental conflict between Delaware law and Italian law regarding repayment of incentives or awards. *See* Motion to Dismiss 2. Mr. Cabri's attempt in his prior briefing to characterize the 2018 Omnibus Plan's repayment provision as "effectively" a non-compete is inapposite, as the provision at issue here is much narrower and concerns conditions placed on incentive compensation not guaranteed by employment. Opposition to Motion for Preliminary Injunction 9–10; *see* Complaint ¶ 51. Even if Mr. Cabri had identified a fundamental conflict of policy, however, his challenge to the 2018 Choice of Law Clause would still fail because he has not shown that Italy has a "materially great interest" in the dispute. Mr. Cabri's argument regarding material interest is premised wholly on his assumption that this case involves a dispute between two Italian citizens. Opposition to Motion for Preliminary Injunction 10–11. This argument fails because the contract at issue here is the 2018 Omnibus Plan between Whirlpool Corp., a Delaware citizen, and Mr. Cabri, an Italian citizen.[12] Accordingly, Delaware's interest in enforcing a choice of law clause entered into by one of its citizens and explicitly designating Delaware law to govern cannot be overcome by an irrelevant Italian interest in overseeing disputes between two Italian citizens.

---

[12]   To the extent that Mr. Cabri attempts to direct the court's attention to his employment agreement(s) with Whirlpool EMEA, Plaintiff Whirlpool's Italian subsidiary, the court declines to address any issue relating thereto. Count One does not claim breach of any employment contract between Mr. Cabri and Whirlpool EMEA.

Since neither of the two exceptions of § 187 have been met, the court finds that the 2018 Choice of Law Clause is enforceable as to the 2018 Omnibus Plan, and Delaware law governs Count One of Whirlpool's Complaint.

**B.      The Forum Selection Clause in the 2018 Omnibus Plan Is Enforceable**

      **1.      Legal Standard**

A defendant may bring a motion to dismiss under Rule 12(b)(2) to argue that there is no personal jurisdiction for the court to hear the case.  FED. R. CIV. P. 12(b)(2).  While the court "accept[s] all of the plaintiff's allegations as true and construe[s] disputed facts in favor of the plaintiff," the plaintiff bears the burden of establishing jurisdiction over a nonresident defendant. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citation omitted); *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998).

Personal jurisdiction can be waived, however, via express or implied consent, including through accepted contract provisions.  *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 703–04 (1982).  "The use of a forum selection clause is an example of an express consent to personal jurisdiction."  *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 431 (D. Del. 1999).

"In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) (internal citation omitted) ("Because '[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature,' . . . federal law applies in diversity cases irrespective of [*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)].").  The presumption of enforceability as to forum selection clauses in contracts between parties is very strong.  *See Atl. Marine Const. Co. v. U.S. Dist. Ct. W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (citation omitted) ("The 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate

expectations and furthers vital interests of the justice system.'"); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) ("[Forum selection clauses are] prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.").

Where a party wishes to challenge the enforceability of a forum selection clause, it must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Bremen*, 407 U.S. at 15. The *Bremen* court also recognized that clauses "should be held unenforceable if enforcement would contravene a strong public policy *of the forum in which suit is brought*." *Id.* (emphasis added).

A party that has agreed to a forum selection clause waives any argument of inconvenience when trying to establish unenforceability.[13] *See, e.g.*, *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) ("Chesapeake admits that by the clause it waived any claim to inconvenience of forum . . . ."); *see also Atl. Marine Const.*, 571 U.S. at 64 (deciding, in the context of a requested transfer, that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum").

**2.      Through the Forum Selection Clause, Mr. Cabri Consented to Personal Jurisdiction as to Count One**

In its Complaint, Whirlpool alleges that personal jurisdiction exists as to all of its claims against Mr. Cabri based on the 2018 Forum Selection Clause, which selects Delaware as the venue

---

[13]      The 2018 Forum Selection Clause explicitly contained a waiver of any convenience argument. *See* Yost Declaration Ex. A ¶ 12.13 (noting that Participants in the 2018 Omnibus Plan "waive[] any objection that the Company and each Participant may now or thereafter have to the venue or jurisdiction of any such Proceeding in any such court or that such Proceeding was brought in an inconvenient court and agree not to plead or claim the same").

for "any proceeding related to the [2018 Omnibus] Plan."  Complaint ¶ 8.  Mr. Cabri's Motion to Dismiss Count One for lack of personal jurisdiction under Rule 12(b)(2) is primarily based on the same public policy considerations he raised with respect to choice of law.  Motion to Dismiss 2 (discussing choice of law and forum selection together); *see also* Opposition to Motion for Preliminary Injunction 9–11.  The court finds that Mr. Cabri has failed to show that the 2018 Forum Selection Clause should be set aside.

First, under the *Bremen* factors, Mr. Cabri has not alleged that the contract was entered into as a result of "fraud or overreaching."  407 U.S. at 15.  Nor has he argued that "enforcement would be unreasonable and unjust," and indeed, it is difficult to identify what argument could be made in this context since the existence of the Clause presupposes that convenience weighs in favor of the selected forum.  *Id.*; *see also Atl. Marine Const.*, 571 U.S. at 64.

Finally, Mr. Cabri's public policy argument must fail.  Specifically, Mr. Cabri argues that enforcing the 2018 Forum Selection Clause would violate Italy's public policy against enforcing such provisions.  Motion to Dismiss 2 ("Delaware courts will not enforce such provisions that are 'contrary to [the] fundamental policy' of another jurisdiction with a 'materially greater interest' in the dispute. . . . Italy has a materially greater interest than Delaware and would not enforce the choice of law, forum selection, or clawback provisions in the 2018 Plan.").  When deciding whether or not to enforce a forum selection clause because of public policy considerations, however, the court "considers whether enforcement would contravene a strong public policy *of the forum in which the suit was brought*, not in a forum in which the suit could have been brought."  *HOPCo Intermediate Holdings, Inc. v. Jones*, No. 20-627-LPS-JLH, 2020 WL 6196293, at *1 (D. Del. Oct. 22, 2020) (emphasis added), *report and recommendation adopted*, 2021 WL 7184249 (D. Del. Jan. 4, 2021); *see Bremen*, 407 U.S. at 15 (holding that forum selection clauses "should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought").

17

Mr. Cabri has failed to identify any "strong public policy" of Delaware's that would weigh against enforcing the 2018 Forum Selection Clause.  *See, e.g.*, *QVC, Inc. v. Your Vitamins, Inc.*, 753 F. Supp. 428, 432 (D. Del. 2010), *aff'd*, 439 Fed. App'x 165 (3d Cir. 2011) (rejecting plaintiff's argument that enforcement of forum selection clause is unreasonable when plaintiff failed to "clearly articulate[] a cognizable public policy violation at issue").  On the contrary, Delaware has a strong public policy in favor of enforcing forum selection clauses.  *See, e.g.*, *Nat'l Indus. Grp. (Holding) v. Carlyle Inv. Mgmt. LLC*, 67 A.3d 373, 383 (Del. 2013) ("[W]here contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause[.]") (quoting *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010).

Therefore, the court finds that Whirlpool has sufficiently established personal jurisdiction over Mr. Cabri as to Count One on the basis of his consent to the 2018 Forum Selection Clause.  Accordingly, his Motion to Dismiss Count One for lack of personal jurisdiction is denied.

### C.   The Court Declines to Dismiss Count One Under the Doctrine of Forum Non Conveniens

#### 1.    Legal Standard

In federal court, forum non conveniens is a discretionary doctrine permitting a district court to dismiss a case where jurisdiction and venue are otherwise properly established "[w]hen an alternative forum has jurisdiction to hear the case," and "trial in the plaintiff's chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems."  *Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (quoting *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008)) (cleaned up).

Four factors "guide a district court's exercise of discretion" in applying the doctrine:

 (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant "private interest" factors affecting the convenience of the litigants; and (4) relevant "public interest" factors affecting the convenience of the forum.

*Kisano*, 737 F.3d at 873 (footnote omitted) (citing *Windt*, 529 F.3d at 189–90). "Private interests" considered under the third factor "include the ease of access to sources of proof; ability to compel witness attendance if necessary; means to view relevant premises and objects; and any other potential obstacle impeding an otherwise easy, cost-effective, and expeditious trial." *Kisano*, 737 F.3d at 873 (citing *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 296 (3d Cir. 2010)). Importantly, however, the existence of "a forum selection clause alters [the forum non conveniens] analysis," such that the court is "not to consider any arguments about the parties' private interests—those 'weigh entirely in favor of the preselected forum.'" *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017) (quoting *Atl. Marine*, 571 U.S. at 64). "Public interests," on the other hand, cover "administrative difficulties arising from increasingly overburdened courts; local interests in having the case tried at home; desire to have the forum match the [governing] law . . . to avoid conflict of laws problems or difficulty in the application of foreign law; and avoiding unfairly burdening citizens in an unrelated forum with jury duty . . . ." *Kisano*, 737 F.3d at 873 (citation omitted); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

**2.    The Relevant Factors Weigh Against Dismissal Under Forum Non Conveniens**

In a challenge related to his arguments concerning choice of law and forum selection, Mr. Cabri moves to dismiss Whirlpool's Complaint in its entirety under the doctrine of forum non conveniens "because this entire matter—its claims, witnesses, and evidence—are all situated in Italy." Motion to Dismiss 6. In his Opposition to Whirlpool's Motion for Preliminary Injunction, Mr. Cabri expanded this summary argument, contending that "deference to Whirlpool's choice of

19

forum is outweighed by the relevant private and public interest factors." Opposition to Motion for Preliminary Injunction 12. Mr. Cabri stated that, because he "is an Italian citizen, and his employment relationship is with Whirlpool EMEA," "the real party in interest is not Whirlpool, but its Italian subsidiary Whirlpool EMEA." *Id.* at 12–13. Further, Mr. Cabri argued that "all relevant witnesses and evidence are in Italy, and it would be significantly more efficient and cost effective to litigate the issues there." *Id.* at 13 ("This is particularly true where, as here, the relevant disputes are not dependent on the application of Delaware law, and Cabri and Whirlpool EMEA are already parties to a lawsuit in Italy. As noted above, Italian law governs the employment relationship and the clawback provision. . . . An Italian court is thus best positioned to address issues of Italian law, and Italy has a greater interest in employment disputes involving its citizens and companies.").

The court rejects Mr. Cabri's arguments and declines to dismiss on the basis of forum non conveniens. As to the first factor—deference to the plaintiff's choice of forum—Mr. Cabri has failed, as discussed *supra*, to show that Whirlpool's selection of Delaware through the 2018 Forum Selection Clause should not be given controlling weight. *See, e.g.*, *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)) (stating that a forum selection clause "represents the parties' agreement as to the most proper forum"). Because the 2018 Forum Selection Clause is enforceable, Mr. Cabri has waived his right to contest the forum on the basis of "private interests," so his arguments to this effect must fail. *Collins*, 874 F.3d at 186. All the court is left to consider, then, "are the second and fourth factors, which *Atlantic Marine* advises will overcome a forum selection clause in only the most 'unusual' and 'extraordinary' circumstances." *Id.* (quoting *Atl. Marine*, 571 U.S. at 62, 64).

The court finds that no such extraordinary circumstances exist here. Although Italy may be an adequate alternative forum, nothing compels the court to dismiss a case involving a dispute between a Delaware citizen and an Italian citizen, which is governed by Delaware law, to be brought

overseas.  For similar reasons, at least one public interest consideration weighs *against* dismissal of Count One: the "desire to have the forum match the [governing] law . . . to avoid conflict of laws problems or difficulty in the application of foreign law . . . ."  *Kisano*, 737 F.3d at 873 (citation omitted).  Here, Delaware law will govern Count One under the 2018 Choice of Law clause, and so there is no potential for a mismatch, or for "difficulty in the application of foreign law" on this ground.

Accordingly, Mr. Cabri's Motion to Dismiss is denied as to Count One.

## II.   MR. CABRI'S MOTION TO DISMISS IS GRANTED WITHOUT PREJUDICE AS TO COUNTS TWO, THREE, AND FOUR

### A.   Legal Standard

Unlike the question of enforceability, "[t]he question of the scope of a forum selection clause is one of contract interpretation" governed by state law.  *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) (quoting *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997)).  When a federal court sits in diversity, the court must "look to the choice-of-law rules of the forum state . . . in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice of law clause."  *Collins*, 874 F.3d at 183 (first citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); then citing *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994)).

Where Delaware law applies to a forum selection clause, ordinarily "[t]he courts of Delaware defer to forum selection clauses and routinely 'give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation.'"  *Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*, 992 A.2d 1239, 1245 (Del. Ch. 2010) (citation omitted).  Delaware courts have held, however, that "a consent to jurisdiction clause operates only as a consent to jurisdiction with respect to the claims to which it applies."  *Ruggiero v.*

*FuturaGene, plc.*, 948 A.2d 1124, 1132, 1133 (Del. Ch. 2008) ("[S]uch consent applies only to those causes of action that are identified in the consent provision.").

In the absence of consent or waiver of personal jurisdiction, the plaintiff bears the burden to "establish[] with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction" over the defendant as to all its claims. *Provident Nat'l Bank v. Cal. Fed. Savings & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987) (citation omitted); *see also Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).

The court considers first whether jurisdiction exists under Delaware's long arm statute, 10 Del. C. § 3104(c), and second, whether subjecting the defendant to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment. *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 767–68 (Del. 1986). Due process is satisfied when an out-of-state defendant has "certain minimum contacts" with the state. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). The contacts must be of such a nature as to provide the defendant with notice that he could be "haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted).

Specific jurisdiction—that is, jurisdiction over a defendant in a particular case[14]—is established where "the defendant has 'purposefully directed' his activities at residents of the forum, . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (internal citations omitted). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum

---

[14]    "General jurisdiction" exists "based upon the defendant's 'continuous and systematic' contacts with the forum . . . even if the plaintiff's cause of action arises from the defendant's non-forum related activities." *Remick*, 238 F.3d at 255 (citation omitted). Because it is unclear on these facts if Mr. Cabri's contacts with the forum state (Delaware) arise to the level of establishing *specific* jurisdiction, it follows that general jurisdiction is inapplicable here.

contacts' in the forum State." *Id.* at 474 (quoting *Int'l Shoe*, 326 U.S. at 316). Therefore, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475 (citation omitted). Although "[p]hysical entrance is not required," "what is necessary is a deliberate targeting of the forum." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citation omitted).

**B.      The 2018 Forum Selection Clause Does Not Apply to Count Two**

Count Two of Whirlpool's Complaint alleges a breach of the 2014 PEP, an award agreement separate from the 2018 Omnibus Plan. The 2014 PEP, pursuant to which Mr. Cabri received certain cash bonuses, contains a repayment provision similar to the provision in the 2018 Omnibus Plan: that is, an employee "'shall be required to repay' Whirlpool the award [granted pursuant to it] if the employee 'becomes employed with a competitor within the two year period following termination' of employment with Whirlpool or 'for any other reason considered by the [Chief Executive Officer and Senior Vice President, Global Human Resources or such other Committee as Whirlpool establishes] in its sole discretion to be detrimental to the Company or its interests.'" Complaint ¶ 93. Mr. Cabri allegedly breached this provision when he refused to return his award money after termination. *Id.* ¶¶ 95–96.

Unlike the 2018 Omnibus Plan, however, the 2014 PEP designates Michigan law to govern its interpretation. Complaint ¶ 52 n.4 (attach. ¶ 8.8). The 2014 PEP does not contain a forum selection clause. *See generally id.* Importantly, Whirlpool has not alleged facts tending to show that the 2014 PEP and claims arising out of it are governed by the 2018 Omnibus Plan and the 2018 Forum Selection Clause contained therein. *See* Complaint ¶¶ 90–91 (emphasis added) ("During the last

23

several years at Whirlpool, and in connection with his role as a top Whirlpool executive, Cabri received significant cash bonus awards. . . . *These bonus awards were issued pursuant to Whirlpool's 2014 Performance Excellence Plan ("PEP") and similar previous PEP Plans, including the 2009 Performance Excellence Plan and the 2004 Performance Excellence Plan*.").

By way of its arguments lumping the Contract Counts together, however, Whirlpool assumes that the scope of the 2018 Forum Selection Clause extends to cover Count Two alleging breach of the 2014 PEP.  *See, e.g.*, Whirlpool's Opposition to Motion to Dismiss 6 (D.I. 31) ("Whirlpool's contract claims are plainly covered by the [2018 Forum Selection Clause.").  For the following reasons, the court disagrees with Whirlpool, and finds that the scope of the 2018 Forum Selection Clause does not cover Count Two.

First,  "[i]n Delaware, a consent to jurisdiction clause operates only as a consent to jurisdiction with respect to the claims to which it applies." *Ruggiero*, 948 A.2d at 1133.  That is "the party is bound only by the terms of the consent, and such consent applies only to those causes of action that are identified in the consent provision." *Id.* at 1132. "Absent ambiguity, the court 'will give priority to the parties' intentions as reflected in the four corners of the agreement. . . .'" *Fla. Chem. Co. v. Flotek Indus., Inc.*, 262 A.3d 1066, 1080 (Del. Ch. 2021) ("*Florida Chemical*") (quoting *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016)).  "[I]t is not the job of the court to relieve sophisticated parties of the burdens of contracts they wish they had drafted differently but in fact did not." *Florida Chemical*, 262 A.3d at 1080 (citation omitted).

The facts of *Florida Chemical* provide a helpful comparison here.  There, the court held that a Delaware forum selection clause in a "Purchase Agreement" also applied to a separate contract, the "Terpene Agreement."  *Id.* at 1080–81.  The forum selection clause in *Florida Chemical* stated that it applied to "any Proceeding arising out of or relating to [1] this Agreement or [2] any other Transaction Document or [3] any agreements compemplated hereby or thereby."  *Id.*  The *Florida*

*Chemical* court found that "the plain language of the Delaware Forum Provision reaches claims arising out of or relating to the Terpene Agreement" because the contract defined the term "Transaction Documents" as including "the Terpene Supply Agreement." *Id.* at 1081.

Here, the 2018 Forum Selection Clause is starkly distinguishable from the forum selection clause in *Florida Chemical*, which by its plain language applied to other agreements.  The 2018 Omnibus Plan states that "[a]ny suit, action or proceeding with respect to the Plan or any Award Agreement . . . shall be resolved only in the courts of the State of Delaware or the United States District Court for the District of Delaware." Yost Declaration, Ex. A ¶ 12.13.  The terms included therein—"Plan" and "Award Agreement" are defined in a limiting manner: "Plan" is defined as the 2018 Omnibus Plan, and  "Award Agreement" is defined as "any agreement, contract or other instrument or document evidencing any Award[15] *hereunder*." *Id.* at 1, ¶ 2.2 (emphasis added).  The plain language of the 2018 Forum Selection Clause, therefore, restricts its own application to the 2018 Omnibus Plan, and does not incorporate other award plans that grant awards different from those granted under the 2018 Omnibus Plan.

In other words, there is no factual basis for the court to conclude that the 2018 Forum Selection Clause is a catchall for any and all claims brought against Whirlpool—rather, it only governs claims with respect to the 2018 Omnibus Plan.  Relatedly, there are no facts to support a finding that the 2018 Omnibus Plan incorporated the 2014 PEP by reference, or vice versa.

Under Delaware law, an agreement may incorporate another by reference only "if there is an 'explicit manifestation of intent' to incorporate one document into another." *See Askari v. Pharmacy Corp. of Am.*, No. 16-1123-RGA, 2018 WL 3768988, at *3 (D. Del. Aug. 8, 2018) (quoting *Wolfson v. Supermarkets Gen. Holdings Corp.*, No. Civ.A. 17047, 2001 WL 85679, at *5 (Del. Ch. Jan. 23,

---

15      Finally, the definiton of "Award" is restricted to consideration "granted pursuant to the provision of the [2018 Omnibus] Plan." *Id.* ¶ 2.1.

2001)). Mere references to other agreements are not sufficient to incorporate the other agreements by reference. *Urdan v. WR Cap. Partners, LLC*, 244 A.3d 668, 674–75 (Del. 2020) (finding that agreement did not incorporate other agreements where there were mere references to related contracts as the court must "interpret the contracts as written and not as hoped for by litigation-driven arguments"). A similar overarching governing law exists in Michigan for incorporation by reference. *Dow Corning Corp. v. Weather Shield Mfg., Inc.*, 790 F. Supp. 2d 604, 611 (E.D. Mich. 2011) (internal citations omitted) ("Moreover, Michigan law permits a party to incorporate terms or documents from other writings into their contracts. . . . Neither physical attachment nor specific language is necessary in order for a document to be incorporated into a contract, but the incorporating instrument must clearly evidence an intent that the writing be made part of the contract.").

The court first finds that there is no clear reference to the 2014 PEP in the 2018 Omnibus Plan. Indeed, the 2018 Omnibus Plan leaves open the possibility that other "compensation arrangements" and "employee benefit plans" may exist in the company, without any indication that the 2018 Omnibus Plan shall govern their terms. *See, e.g.*, *id.* ¶¶ 12.8, 12.9 ("*Other Plans*. Nothing contained in the Plan shall prevent the Board from adopting other or additional compensation arrangements, subject to stockholder approval if such approval is required; and such arrangements may be either generally applicable or applicable only in specific cases.").

Likewise, the terms of the 2014 PEP also indicate no intent by Whirlpool to incorporate by reference the 2018 Omnibus Plan. There is a single mention of the Omnibus Plans as the source of a single definition for "Change in Control," indicating that Whirlpool could have included other incorporation by reference provisions in the 2014 PEP if it had intended to do so. Complaint ¶ 52 n.4 (attach. ¶ 7.2). Finally, the fact that 2014 PEP contains a different choice of law provision, selecting Michigan law to govern it as opposed to Delaware, suggests that Whirlpool intended for different terms to apply to the 2014 PEP than to the 2018 Omnibus Plan. *Id.* ¶ 8.8. Since there is no

clear intent that the 2014 PEP be governed by the terms of the 2018 Omnibus Plan, the court declines to assume that the 2014 PEP is subject to the same terms as the 2018 Omnibus Plan.

Accordingly, the court finds that Count Two of Whirlpool's Complaint, alleging breach of the 2014 PEP, is not within the scope of the 2018 Forum Selection Clause.

### C.   The 2018 Forum Selection Clause Does Not Apply to Counts Three and Four (The Trade Secret Counts)

Next, the court finds that Counts Three and Four—the Trade Secret Counts—are also not subject to the 2018 Forum Selection Clause, because the Trade Secret Counts do not "relate to" the 2018 Omnibus Plan.

Whirlpool contends that the "broad" language of the 2018 Forum Selection clause can cover claims that are not "contract-based, so long as [they are] related to the Plan." Opposition to Motion to Dismiss 7. Whirlpool argues that its "action is based on contract and 'other[]' claims," all of which "are in a proceeding 'related to' the Plan." *Id.*

While the 2018 Forum Selection Clause is broad in that it covers "[a]ny suit, action or proceeding with respect to the Plan or any Award Agreement" and "any proceeding relating to the Plan or any Award Agreement," this breadth simply means that the Clause covers more types of claims relating to the 2018 Omnibus Plan than contract claims alone. *See ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, No. 6562-VCP, 2011 WL 4552508, at *5 (Del. Ch. Sept. 14, 2011) (citation omitted) ("Broad forum selection clauses, on the other hand, which expressly cover, for example, all claims between the contracting parties that 'arise out of' or 'relate to' a contract, apply not only to claims dealing directly with the terms of the contract itself, but also to 'any issues that touch on contract rights or contract performance.'"). It does not follow, however, that the 2018 Forum Selection Clause covers claims brought by Whirlpool *unrelated* to the 2018 Omnibus Plan.

In support of the Trade Secret Counts, Whirlpool alleges that, should Mr. Cabri take on the senior role he intends to perform at Haier, it is "impossible" that he will be able to do so "without using and disclosing the trade secrets he acquired while serving as the Global Platform Leader for Front-Load Laundry and continued to have access to as the Global Platform Leader for Built-In Cooking." Complaint ¶ 64. "Simply put, every skill, experience, and insight Cabri has in his possession was acquired during his thirty-two years at Whirlpool. These skills, experiences, and insights include and rest upon many of Whirlpool's valuable trade secrets." *Id.* In its allegations specific to Count Three and Count Four, Whirlpool details how Mr. Cabri will unjustly enrich himself and Haier through the use of Whirlpool's trade secrets—but at no point does Whirlpool identify how this alleged misconduct relates to Mr. Cabri's receipt of awards under the 2018 Omnibus Agreement. *See generally id.* ¶¶ 98–117.

Rather, in its arguments opposing Mr. Cabri's Motion to Dismiss, Whirlpool attempts to expand the scope of the 2018 Forum Selection Clause by treating *all* underlying facts in this case as the operative "nucleus" out of which its claims against Mr. Cabri arise:

> Here, the underlying proceeding itself is "related to" the plan because Whirlpool has brought contract claims to recover amounts Cabri owes under the plan. The trade secrets claims are made "in respect of" the proceeding because they are based on the same facts supporting the contract claims; namely that Cabri engaged in conduct detrimental to Whirlpool by misappropriating trade secrets. . . . Both the contract claims and the trade secret claims arise from the same nucleus of facts, and Whirlpool's trade secret claims thus are "in respect of" the proceeding and are covered by the FSC.

Opposition to Motion to Dismiss 7. The operative facts out of which Count One arises, however, are the facts alleged to show Mr. Cabri's failure to repay the awards granted pursuant to the 2018 Omnibus Plan. The operative facts out of which the Trade Secret Counts arise are the facts alleged to show that Mr. Cabri intends to misappropriate Whirlpool's trade secrets in his work for Haier. That Whirlpool may have concluded, based on its belief that Mr. Cabri would misappropriate

information, that it should seek to recover awards it had issued to him, does not render the Trade Secret Counts "related" to award contracts that contain no provisions governing the misconduct alleged under Counts Three and Four.  A party who consents to a forum selection clause does not consent to jurisdiction over "every possible breach of duty that could occur between the parties." *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002) (interpreting an arbitration provision); *see also ASDC Holdings*, 2011 WL 4552508, at *4 (citation omitted) ("This Court treats forum selection clauses 'in the same spirit' as arbitration clauses; thus, the same general principles apply in determining the scope and level of deference to be given either kind of clause.").

Accordingly, the court finds that 2018 Forum Selection Clause "can extend only so far as the series of obligations set forth in the underlying agreement"—here, the 2018 Omnibus Plan.  *Parfi*, 817 A.2d at 156 (emphasis added) (citation omitted) ("[The lower court] should have concentrated on the similarity of the separate *rights* pursued by plaintiffs under both the contract and the independent fiduciary duties *rather than the similarity of the conduct that led to potential claims for both the contract and fiduciary breaches of duty.*").  As Magistrate Judge Hall pointed out in her Report and Recommendation,[16] the 2018 Omnibus Plan "does not contain any promises regarding confidentiality or trade secrets,[17] nor does it contain any non-compete promises. It says, essentially, that if the employee goes to work for a competitor, it might have to pay back some of the award money, but

---

[16]     While the court agrees with Judge Hall's reasoning relating to personal jurisdiction as to the Trade Secret Counts, it addresses Judge Hall's Report and Recommendation separately, *infra* III., because the Report and Recommendation was issued to address Whirlpool's Motion for Preliminary Injunction.

[17]     The only mention of protection of trade secrets in the 2018 Omnibus Plan is in the context of a condition to receive "unexercised Option of Stock Appreciation Right[s], [or] unearned Performance Award[s]."  Yost Declaration, Ex. A ¶ 12.5.  Since Mr. Cabri has already received the awards at issue here, this provision is inapplicable.

there is no promise that the employee won't work for a competitor."  Report and Recommendation at 7.

Accordingly, the court finds that Counts Three and Four of Whirlpool's Complaint, alleging misappropriation of Whirlpool's trade secrets, are not within the scope of the 2018 Forum Selection Clause.

### D.      Whirlpool Has Failed to Allege Any Other Independent Basis for Personal Jurisdiction as to Any of Its Claims

Because the court finds that Counts Two, Three, and Four are not within the scope of the 2018 Forum Selection Clause, it is necessary to determine whether there exists any other basis for finding personal jurisdiction over Mr. Cabri as to those claims.  That is, to survive Mr. Cabri's Motion to Dismiss as to the Counts Two, Three, and Four, Whirlpool needed to establish specific personal jurisdiction over Mr. Cabri.  As discussed, however, Whirlpool's sole basis for alleging personal jurisdiction over Mr. Cabri was the 2018 Forum Selection Clause.  Complaint ¶ 8 (emphasis added) ("This Court has personal jurisdiction over Cabri *based on the exclusive forum selection clause* Cabri agreed to when he accepted equity and cash incentive awards from Whirlpool pursuant to the terms of the plans governing such awards, including, but not limited to, Whirlpool's 2018 Omnibus Stock and Incentive Plan."); *see also* Report and Recommendation at 6 ("[Plaintiff . . . acknowledged during the hearing today that its only theory in support of the Court's exercise of jurisdiction over defendant is based on defendant being bound by the forum selection clause in plaintiff's award plans."). Whirlpool has made no allegations or arguments pertaining to specific jurisdiction over Mr. Cabri, and indeed, its Complaint is devoid of any reference to contacts Mr. Cabri had with Delaware independent of the language of the 2018 Forum Selection Clause.  *See generally* Complaint.

Whirlpool's sole remaining argument concerning personal jurisdiction asks the court to exercise "pendent jurisdiction," through the 2018 Forum Selection Clause, over the Trade Secret

Counts. *See* Objections at 1 ("[On the basis of the Clause, t]he [c]ourt has pendent jurisdiction over the trade secret claims."); Opposition to Motion to Dismiss 2 ("Cabri's personal jurisdiction argument fails because (1) he consented to jurisdiction in Delaware by agreeing to the [2018 Forum Selection Clause] for all claims; (2) the [Clause] is enforceable; (3) even if the [Clause] does not cover Whirlpool's trade secret claims, the court has pendent jurisdiction over those claims."). Whirlpool claims that "[p]endent jurisdiction allows a court to exercise jurisdiction over all claims 'arising from the same nucleus of facts' provided it has jurisdiction over one claim within that nucleus." *Id.* at 10 (citations omitted).

"Pendent jurisdiction," the doctrine later codified in 28 U.S.C. § 1367 (Supplemental Jurisdiction) is generally a question of subject matter jurisdiction rather than personal jurisdiction:

> Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim "arising under (the) Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . . " and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. . . . The state and federal claims must derive from a common nucleus of operative fact.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (footnote omitted) (internal citations omitted); *see also Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995) (discussing the codification of *Gibbs*).

The Third Circuit, however, has recognized the related doctrine of pendent *personal* jurisdiction where the central, *federal* claim is brought under a statutory scheme that itself establishes extraterritorial personal jurisdiction. *See, e.g.*, *Laurel Gardens, LLC, v. Mckenna*, 948 F.3d 105, 116–17 (3d Cir. 2020) (citation omitted) ("When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction.").

In that context, pendent jurisdiction may be exercised over state law claims that satisfy the "common nucleus of operative fact" test even though no independent basis of personal jurisdiction

exists as to those state law claims. *See Robinson v. Penn Cent. Co.*, 484 F.2d 553, 554 (3d Cir. 1973) (emphasis added) ("[The defendant] does not contest that service could be made upon him with respect to the Securities Exchange Act and Securities Act claims in whatever district he might be found, since those statutes explicitly so provide. . . . Nor does he contend, at least at this stage of the proceedings, that the state law claims would not qualify as pendent to the federal claims . . . ."); *id.* at 556 ("[R]ecognizing that [the defendant] was properly before it *by virtue of extraterritorial service authorized by two federal statutes*, the district court properly weighed considerations of judicial economy, convenience and fairness, and concluded that it would entertain the pendent [state] claims.").

Here, as a threshold matter, Count One—the only claim over which the court has personal jurisdiction—is a state law contract claim and is not subject to a statutory scheme that establishes the kind of statutory, extraterriotorial personal jurisdiction countenanced in *Robinson* and other cases. *See, e.g. Laurel Gardens*, 948 F.3d at 124 (finding that pendent personal jurisdiction applied where the central federal claim was brought pursuant to provisions of RICO that authorized nationwide service of process). Accordingly, the Third Circuit authority relied on by Whirlpool is inapposite. To the extent that Whirlpool's pendent personal jurisdiction argument relies on a broader form of "ancillary" personal jurisdiction, recognized by Delaware state courts, the court finds that Whirlpool's argument still fails. Specifically, Whirlpool relies on two Delaware Chancery Court cases to support a theory by which "[t]he court may exercise its discretion to litigate a claim for which personal jurisdiction would not otherwise exist where the claim is brought along with other claims for which jurisdiction does exist that are sufficiently related to that claim to warrant prosecution before a single tribunal." *Cap. Grp. Cos. v. Armour*, No. Civ.A. 422-N, 2004 WL 2521295, at *4 (Del. Ch. Oct. 29, 2004); *see also Fitzgerald v. Chandler*, Nos. 15689-NC, 15690-NC, 1999 WL 1022065, at *4 (Del. Ch. Oct. 14, 1999).

The court disagrees that the Trade Secret Counts "are sufficiently related" to Count One, for the reasons addressed in its discussion of the scope of the 2018 Forum Selection Clause. Moreover, the court notes that this discretionary exercise of jurisdiction is dependent on "the substantive due process rights of the parties" remaining unaffected. *Cap. Grp. Companies*, 2004 WL 2521295, at *4. In other words, nothing in Whirlpool's cited authority excuses the court from its obligation to comply with the federal constitutional standard of due process. *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 260 (3d Cir. 2008) ("In a diversity action, [a federal district court] may exercise personal jurisdiction over a non-resident defendant if jurisdiction is proper under [the state's] long-arm statute and if that exercise of jurisdiction accords with federal constitutional due process principles."). Here, as noted, the court has already concluded that the 2018 Forum Selection Clause only applies to Count One. For the court to attempt to broaden the reach of Mr. Cabri's limited consent to personal jurisdiction through the exercise of its discretionary powers would violate the minimum contacts standard of due process. *See Burger King*, 471 U.S. at 473–74; *see also, e.g.*, *Lone Pine Res., LP v. Dickey*, No. 2020-0450-MTZ, 2021 WL 2311954, at *12 (Del. Ch. June 7, 2021) (finding that it would violate the minimum contacts standard to overbroadly interpret the consent given through a forum selection clause).

Therefore, in the absence of any other facts alleged to support a finding of specific jurisdiction over Mr. Cabri, the court must grant Mr. Cabri's Motion to Dismiss for lack of personal jurisdiction as to Counts Two, Three, and Four.

## III.   THE PARTIES' REMAINING OUTSTANDING MOTIONS ARE DENIED AS MOOT

The two other motions before the court—Whirlpool's Motion for Preliminary Injunction (D.I. 7) and Mr. Cabri's Motion to Stay Discovery (D.I. 39)—are denied as moot.

Whirlpool's Motion for Preliminary Inunction comes before the court subject to a recommendation of dismissal by Magistrate Judge Hall. Report and Recommendation at 4–8. The

court agrees with Judge Hall's recommendation that personal jurisdiction does not exist as to the Trade Secret Counts.[18]  Because the court grants Mr. Cabri's Motion to Dismiss as to the Trade Secret Counts, however, it denies Whirlpool's Emergency Motion for Preliminary Injunction and Expedited Proceedings as moot.  *See Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (citation omitted) (stating that whether injunctive relief should be granted depends on whether the plaintiff is "likely to succeed on the merits of their claims"); *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("'Without jurisdiction the court cannot proceed at all in any cause'; it may not assume jurisdiction for the purpose of deciding the merits of the case.") (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94 (1998).

Likewise, the court dismisses Mr. Cabri's Motion to Stay Discovery (D.I. 39) as moot.


## CONCLUSION

For the foregoing reasons,

Magistrate Judge Hall's Report and Recommendation (D.I. 26) is ADOPTED as modified;

Plaintiff's Emergency Motion for Preliminary Injunction and Expedited Proceedings (D.I. 7) is DENIED as moot;

Defendant's Motion to Dismiss (D.I. 27) is DENIED as to Count One of Plaintiff's Complaint, and GRANTED without prejudice as to Counts Two, Three, and Four; and

Defendant's Motion to Stay Discovery Pending Resolution of His Motion to Dismiss (D.I. 39) is DENIED as moot.

---

[18]     Judge Hall assumed, for purposes of ruling on Whirlpool's Emergency Motion, that the 2018 Forum Selection Clause was enforceable and covered both Contract Counts.  Report and Recommendation at 6.

Plaintiff has thirty (30) days from the date of this Memorandum Opinion to file a motion for leave to amend its Complaint.  In the absence of such a motion, the court's dismissal of Counts Two, Three, and Four without prejudice shall convert to a dismissal with prejudice.

**SO ORDERED.**